## John Ridgely, of John, *vs.* Joshua B. Bond and Wife.

It is the duty of this court to regard the ruling of the court below, in granting a prayer, by referring to the testimony contained in it: if there are *other facts* disclosed in the record, of which the party might have availed himself at the trial, but did not incorporate them in his prayer, it is too late to avail himself of them in this court.

To maintain an action of trespass *quare clausum fregit*, the plaintiff must either show title to the land on which the trespass was committed, or that he was in actual possession thereof at the time of the trespass.

A prayer, that if the jury believe the plaintiff's ancestor was, in his life time, and *for many years*, in peaceable possession of the land, claiming title thereto, makes out a case of a possessory title only, and as these *many years* might have been for any indefinite number less than *twenty*, the period when an adverse possessory title only becomes mature, the prayer is erroneous.

The Act of 1852, ch. 177, so far as it applies to cases of trespass *q. c. f.*, in this regard, does not alter the law in any other respect than to enlarge the evidence to prove adversary possession; it does not diminish the time in which to establish a possessory title.

A prayer calculated to mislead the jury as to what is a possessory title, is erroneous.

The question of damages in an action of trespass *q. c. f.*, is for the jury: they may combine in their verdict damages for the *conduct* of the defendant for entering the premises, *knowing they were not his*, and for his subsequent acts after such entry.

Appeal from the Circuit court for Howard county.

*Trespass quare clausum fregit*, brought on the 27th of January 1857, by the appellees against the appellant, for breaking and entering a close called "The Eleven Acre Lot," being part of a tract called "*Hobb's Rest.*" Pleas which were treated as a plea of *non cul.*, were filed, upon which issues were joined.

*Exception.* The evidence offered in the cause on both sides, sufficiently appears in the arguments of counsel and the opinion of this court. Two prayers were offered on the part of plaintiffs, which are set out in full in the opinion of this court. These prayers the court (Brewer, J.) granted, and the verdict and judgment being in favor of the plaintiffs, the defendant appealed.

Ridgely vs. Bond & Wife.

The cause was argued before TUCK, BARTOL and GOLDS-BOROUGH, J.

*Thos. Donaldson*, for the appellant, argued:

1st. That neither of the plaintiffs having ever been in *possession* of "The Eleven Acre Lot," or of any part of it, and not even pretending to be so at the time of the alleged trespasses, they could only recover in this case by establishing *title* in themselves to the premises, and this they have utterly failed to do. It is on the strength of their own title that they must rely, not on the weakness of the defendant's. No patent from the State was offered in evidence by them; but by the law as it now stands, (Act of 1852, ch. 177,) a patent shall be presumed in favor of a party showing *a title otherwise good*. All that the plaintiffs show by the proof is, that Thomas Hobbs called himself the owner of the land for twelve years, from 1804 to 1816, and that in the latter year he caused it to be surveyed, and executed and recorded a conveyance of it to Dr. Howard, the father of Mrs. Bond. The land was lying out in commons, unenclosed from before 1804 till 1846, when the defendant enclosed and cultivated it. The survey of the land did not amount to a possession of it by Thos. Hobbs; and if it did, was only possession during survey; Dr. Howard, who lived but two years after 1816, never was in possession at all; nor was any one claiming under Dr. Howard ever in possession of it till Geo. W. Hobbs entered upon it in October 1856. If this be all that is necessary to show a good title now that a patent may be presumed, then indeed is the law revolutionised by the Act of 1852, and a most *liberal* construction would thus be given to it in face of the decision of this court in 10 *Md. Rep.*, 146, *Thistle vs. Frostburg Coal Co.* But it is still indispensable that the plaintiff should exhibit a case negativing an outstanding title in every one, other than the State. There should have been in Thos. Hobbs a possession adverse, exclusive and continuous, for more than twenty years, in order to his acquiring a good title to be conveyed to Dr. Howard, unless he himself derived under persons who had

acquired title. If the rule were otherwise, the defendant might be subject to a number of suits for the same trespass. Suppose John Smith claimed ownership of the lot from 1800 to 1815, and in 1815 he conveyed the same, by deed, to John Brown, after causing a survey to be made, and the heirs of John Brown were to sue the defendant for a trespass. Under the ruling in this case he would recover, and so might half a dozen others on no stronger proof of title. And suppose John Doe were to sue and produce the patent, and trace a clear paper title to himself, is it not certain that he must recover too? If causing a survey by Thos. Hobbs was, in law, a possession on his part, (which is denied,) it was but for a day; and even if it had continued during the whole twelve years of his claim of ownership, it was not enough to give him a title, and having no title he could give none to Dr. Howard. Thus it is clear the plaintiffs have shown no good title in themselves, and not having had possession, they could not recover, and their first prayer was improperly granted. 1 *H. & J.*, 295, *Norwood vs. Shipley*. 2 *H. & McH.*, 57, *Helms vs. Howard*. 9 *Gill*, 273, *Cresap vs. Hutson*. 1 *Md. Rep.*, 52, *Mitchell vs. Mitchell*. 10 *Md. Rep.*, 129, *Thistle vs. Frostburg Coal Co*. 4 *Md. Rep.*, 173, *Hammond vs. Inloes*. 5 *Md. Rep.*, 237, *Hoye vs. Swan*. *Ibid*, 256, 274, *Armstrong vs Risteau*. *Adams on Eject.*, 281, 282.

2nd. The second prayer would seem to authorise the jury to give damages beyond the amount of injury and loss actually sustained by the plaintiffs, for the purpose of punishing the defendant, if he entered the close, "knowing it was not his." If such be its meaning, the court certainly erred in granting it. There was no evidence, whatever, showing such knowledge on his part; for the vague declaration of Perry G. Hobbs, a volunteer, that "there were eleven acres not connected with 'The Old Place,'" cannot be taken into consideration. 11 *Md. Rep.*, 400, *Carroll vs. Granite Co*. On the other hand, the testimony is clear, that the defendant was assured by the party from whom he purchased "The Old Place," that the piece of land on which the trespass is al-

leged to have been committed, was a part of that place; and after receiving that assurance, he enclosed and cultivated that piece. But even if he had known that he had no title to this piece of land, that fact alone could not authorise vindictive damages. The evidence shows, that for upwards of forty-two years, the land, though in the midst of a long settled country, had been lying out in commons, abandoned by its legal owners, if any existed. To inflict punishment on one, who enclosed and brought it into cultivation, besides requiring from him a surrender of all profits derived from it, and payment for every actual injury, and at the same time to give a premium to the negligence of the owners, would be a most extraordinary measure of justice, and in the face of all the authorities in regard to vindictive damages. 2 *Greenlf's Ev.*, secs. 253, 272 and *notes. Sedgwick on Damages*, 39. 13 *How.*, 371, *Day vs. Woodworth.* 21 *How.*, 214, *Phil. & Wil. & Balt. R. R. Co.*, *vs. Quigley.* This second prayer is also formally defective and uncertain in its meaning, especially in its mode of stating the rule of damages.

3rd. The first prayer is formally defective in several particulars, and so indefinite as to mislead the jury: 1st. The jury is not confined by its terms to the evidence in the case. 2nd. It states that, if the jury "find that Thomas Hobbs was in his lifetime, and *for many years*, in peaceable possession of the land," &c., under which the jury might suppose that possession for a less term than twenty years could confer a title. 3rd. It states, "that if they find that the defendant entered the close *mentioned in the proceedings.* 4th. It states, "that the defendant cultivated said land, after the wood and timber were so cut as aforesaid, *for and during time mentioned by the witnesses."* 5th. It directs that the verdict of the jury "ought to be for the plaintiffs, for such damages as they shall find they have sustained," without confining their right of recovery to the damages sustained *from the acts of the defendant.*

*A. H. Hobbs*, for the appellees:

1st. A "mere possessory title," or "temporary interest,"

is sufficient to sustain the action of trespass *q. c. f.*, against a *tort-feasor*, setting up no title in himself, as is the case here. 5 *Md. Rep.*, 550, *Tyson vs. Shueey.* 13 *Md. Rep.*, 73, *Wilson vs. Hinsley.* 7 *G. & J.*, 333, *Dorsey vs. Eagle.* 3 *McCord*, 422, *Davis vs. Clancy. Dorsey on Eject.*, 33. The possession of part of the tract called "Hobbs Rest," with a claim of title to the whole, of which the *locus in quo* is a part, together with the "acts of user and ownership," performed in respect to the lot in question, the survey, marking of boundaries and establishing the lines thereof, were *facts* from which it was perfectly competent *for the jury to find possession in Thos. Hobbs, Sen.* These acts were public, notorious, and if done by any other person than the rightful owner, would have been a trespass, subjecting the intruder to suit and damages. *Act of* 1852, *ch.* 177, *sec.* 2. Assuming, then, the existence of the fact of possession in Thos. Hobbs, *he* could have maintained the action of trespass. Being in possession, and claiming title to the land, he was *prima facie*, the owner in fee, and had full right and power to dispose of his estate and interest, *for possession and claim of title is evidence of title in fee.* 2 *Bl. Comm.*, 290. *Adams on Eject.*, 13. 1 *Greenlf's Ev.*, secs. 311, 555. 7 *Wheat.*, 105, 106, *Ricard vs. Williams.* 7 *Sergt. & Rawle.*, 137, 144, *Miller vs. Shaw.* 17 *Ala.*, 714, *Cox vs. Davis.* 15 *New Hamp.*, 211, *Moor vs. Campbell.* 4 *Barr.*, 254, *Altemus vs. Long.* As "the right of alienation is incident to all property, (5 *Md. Rep.*, 140, *Wilson vs. Farquharson,*) and as the grantor of the appellees was, *prima facie*, the owner in fee of the premises in question, (for having shown a *prima facie* case, the burden of proof is shifted to the defendant. 4 *Md. Rep.*, 173, *Hammond vs. Inloes,*) the execution and delivery of the deed of the 6th of May 1816, to Dr. Howard, was a valid exercise of his right and power; it invested Dr. Howard with the full and unqualified property and estate in and to said lot of ground, and being so invested under this deed, he was clothed with a *good title*, and was from that time forth in the *legal possession of the premises.* 9 *Gill*, 276, *Cresap vs. Hutson.* 5 *Md. Rep.*,

252, 254, *Hoye vs. Swan.* 37 *Maine*, 14, *Wentworth vs. Blanchard.* It is said in the case of *Ward vs. Fuller*, 15 *Pick.*, 185, that a deed of bargain and sale is *equivalent* to livery of seizen. The ancestor, (Dr. Howard,) thus holding the legal title to the premises, and having died seized of the same, his heirs, (of whom Mrs. Bond is the only survivor,) are entitled to the property, *prima facie.* 10 *Johns.*, 355, *Smith vs. Lorillard. Adams on Eject.*, 324. Looking, therefore, to the principles above stated, and to the fact that all reasonable "presumptions are made in favor of the true owner," as against *one having no title—a mere tort-feasor,* (5 *Md. Rep.*, 255, *Hoye vs. Swan,*) I submit that the plaintiffs' prayers were properly granted, and the judgment ought to be affirmed.

2nd. From the facts disclosed by the record there is another theory which entitles the appellees to an affirmance. On the execution and delivery of the deed of 1816 by Thos. Hobbs to Dr. Howard, the latter held the property under "color of title," and those claiming under him so held, till the appellant took wrongful possession in 1846, being a period of *over twenty years*, which alone, and without regard to *title* in Hobbs, was sufficient to enable the appellees to sustain, not only trespass *q. c. f.*, but the action of ejectment; for it is said in *Armstrong vs. Risteau*, 5 *Md Rep.*, 272, that *twenty years uninterrupted possession* by enclosures, tolls the entry and enables the claimant to maintain ejectment. And of like effect is the *bare claim of an intruder continued for twenty years under a deed of bargain and sale, which ripens his claim into a good title;* it is a claim "under color of title." 5 *Md. Rep.*, 248, 250, *Hoye vs. Swan.* Now an *enclosure* is not, *per se*, adverse possession. It is only *evidence* of the intention of the occupant so to claim. A *fence* is evidence of that intention; and it also serves to *fix* and *limit* the *extent* of the supposed claim, and announces to all concerned the *presumption* of an *adversary* holding. In a word *it affects them with notice.* 10 *Pet.*, 442, 443. *Ellicott vs. Pearl.* 4 *Strobhart*, 23, *Golson vs. Hook.* A deed, therefore, duly acknowledged and recorded, affects

all with notice of its contents; because all persons have free access to the records, and *are bound* by the contents of instruments of writing required to be enrolled. A deed of bargain and sale, duly recorded, is equivalent to livery of seizen at common law, because it *fixes* and *limits* the *extent* of the grantee's claim with *as much certainty as an enclosure*, and in contemplation of law, is *equally notorious*. 15 *Pick.*, 189, *Ward vs. Fuller*. 2 *Strobhart*, 29, *Bank vs. Smyers*. 2 *Greenlf's Rep.*, 275, *Kennebec Purchase vs. Laboree*. 4 *Mass.*, 416. *Kennebec Purchase vs. Springer*. 3 *Watts*, 72, *M'Call vs. Neely*. *Smith's Lead. Cases*, 495, 496. It is assumed, then, that the law is clear that the *adverse* claim of possession by *enclosure*, and claim "under color of title," are the same. One indicates the *adverse* claim by some visible *indicia* on the premises—as a fence, fixing the *extent* of the claim; the other furnishes the same information by the *description*, *metes* and *bounds*, contained in the recorded deed. 5 *Md. Rep.*, 248, 260. If Dr. Howard had enclosed this lot of ground in 1816, and had kept it enclosed till 1843, when the trespass was committed, no one, I suppose, would question the *right* of him or his heirs to maintain the action of trespass. Holding the property then, under and by virtue of a deed of bargain and sale, duly acknowledged and recorded, (which is equivalent to livery of seizen, 15 *Pick.*, 189,) the *same right* is *preserved* to the parties, and is clearly effective for the purposes of this action. Such a holding is, to every intent and purpose, as efficacious and operative in law, as possession by actual enclosure. Upon either theory of the case, therefore, it is submitted the judgment ought to be affirmed.

3rd. The objection to the second prayer, in regard to damages, cannot be sustained. There is evidence from which vindictive damages may be given. The information given by the witness, P. G. Hobbs, was sufficient to have put the defendant on enquiry as to his title. The deed under which he claims "The Old Place," showed by metes and bounds the extent of his own lines, and he had no right to go out recklessly and seize upon the land of his neighbor. It was a case for vindictive damages. A party may *innocently* appropriate his neighbor's property, *supposing* it to be his

Ridgely vs. Bond & Wife.

own, and then the value of the property is the measure of damages, but when he does so, knowing it *not* to be his own, he is liable in vindictive damages, 12 *Md. Rep.*, 122, *Schindel vs. Schindel. Malice* is doing an act for which there is no justifiable cause

GOLDSBOROUGH, J., delivered the opinion of this court.

This is an action of trespass *quare clausum fregit*, instituted in the circuit court for Howard county, by the appellees against the appellant. The appellant pleaded three pleas, which were treated as a plea of not guilty, and the appellees, by their general replication, joined issue thereon.

A single exception was taken, from which it appears that the controversy arose in consequence of the appellant taking possession of, enclosing and exercising acts of ownership over a parcel of land mentioned in the declaration. After the plaintiffs had submitted their evidence to the jury, they offered the following prayers: 1st. "The plaintiffs' counsel pray the court to instruct the jury, that if they find that Thomas Hobbs, Senior, was in his life time, and for *many years, in the peaceable possession of the land* and premises described in the declaration, claiming exclusive title thereto prior to the 6th day of May 1816, and further find that on said 6th day of May 1816, the said Thomas Hobbs made and executed the deed offered in evidence, to Dr. Henry Howard, and said deed was duly acknowledged and recorded, as it purports to be; and that the said Dr. Howard departed this life thirty or forty years ago, leaving no widow, but left several children, his heirs at law, and the said Rebecca J. Bond was one of said children; that she intermarried with the said Joshua B. Bond about the year 1840, and that all of the children of said Dr. Howard died before the year 1840, leaving no issue, no one of them having been married, except the said Rebecca J. Bond, and that she is the only surviving child and heir of the said Dr. Howard; and if the jury further find that the said defendant broke and entered the close and premises mentioned in this proceeding, cut the timber and wood off and from the same, as alleged in the declaration, and carried the same away, and appropriated it, or the proceeds thereof, to

his own use; and further find that the defendant cultivated said land after the wood and timber were carried away as aforesaid, for and during the period of time mentioned by the witnesses, and appropriated the issues and profits thereof to his own use, then their verdict ought to be for the plaintiffs, for such damages as they shall find they have sustained."

2nd. "And the plaintiffs further pray the court to instruct the jury, that if they find the facts enumerated in the plaintiffs' first prayer, and further find that the defendant broke and entered the close aforesaid, and committed the trespass aforesaid, knowing it was not his, the defendant's land, then they are not limited to the actual amount of the damages committed, if they should find that any have been committed, and may find such further damages as the facts and circumstances accompanying such trespass may warrant."

The court granted both of these prayers. The defendant excepted, and the verdict and judgment being for the plaintiffs, he appealed to this court.

Our duty is to regard the ruling of the court below in granting the first prayer in the exception, by referring to the testimony contained in it. Whatever other facts may have been disclosed in the trial below, it was in the power of the appellees, at the trial, to have availed themselves of them. Not having done so by their incorporation into the prayer, to the granting of which the appellant excepted, it is now too late.

To maintain an action of trespass *quare clausum fregit*, the plaintiff must either "show title to the land on which the trespass was committed, or that he was in actual possession thereof at the time of the trespass." See *Norwood vs. Shipley*, 1 *H. & J.*, 295. It is not pretended, nor is there any evidence to show, that the plaintiffs were in possession of the land in controversy at the time of the alleged trespass.

But it is insisted by the appellants that they show color of title by establishing the fact, that Rebecca J. Bond, one of the appellees, was the only heir at law of Dr. Henry Howard, and that Dr. Howard obtained the land in controversy by deed from Thomas Hobbs, in 1816.

But does the evidence embraced in the prayer establish Hobbs' title? It was a mere possessory title that Hobbs was, in his life time, and *for many years*, in the peaceable posses- sion of the land, claiming title thereto. These many years might have been for any indefinite number less than twenty years, the period fixed by law when an adverse possessory title only becomes mature. We do not regard the Act of 1852, ch. 177, so far as it may apply to this case, as altering the law in any other respect than enlarging the evidence to prove adversary possession, certainly not to diminish the time in which to establish a possessory title.

For these reasons, and because it was calculated to mislead the jury as to what was a possessory title, we think the court erred in granting the prayer.

We concur in the ruling of the court in granting the second prayer contained in the exception.

The question of damages being properly submitted to the jury, it was their province, in assessing the damages, to com- bine in their verdict damages for the conduct of the appellant for entering the premises, knowing they were not his, and for his subsequent acts, after such entry.

*Judgment reversed and procedendo awarded.*

(Decided February 28th, 1861.)