Wood *vs.* Ramsey.

(Decided 9th May, 1889.)

---

# WILLIAM C. WOOD *vs.* JOHN A. RAMSEY.

*Partition Deeds—Priority—Metes and Bounds—Courses and Distances—Trespass quare Clausum fregit—Question of Location.*

Where two deeds bear the same date, and are executed at the same time as partition deeds, neither can take priority over, and be superior to, the other as a title paper, but they must be reconciled.

Metes and bounds always control courses and distances. Natural and certain calls, when they can be found, will invariably control. If the call cannot be found then the course and distance must prevail.

In an action of trespass *quare clausum fregit,* it appears that the plaintiff and defendant claimed respectively under two deeds of partition, in which the two division lines between the divided tracts were the same, the distances being the same in each deed, but the courses were the reverse of each other. The call at the end of the fourth course of the plaintiff's deed was the beginning point of the defendant's deed, and was described in both deeds as "a stake upon the shore of the Patuxent River, near a water fence, three perches from a stake at the beginning of the twenty-eighth course of the survey made as aforesaid by the commissioners to mark and bound said land." The evidence being conflicting as to the true location of this stake, it was HELD:

That if the point on the Patuxent River could not be fixed as the imperative call for the plaintiff's deed, so that it could be located with certainty, of course it must be located by course and distance, with proper variation of the needle, and that would establish the line of division.

APPEAL from the Circuit Court for Calvert County.

The case is stated in the opinion of the Court.

*Exception:*—At the trial the plaintiff offered the three following prayers :

1. If the jury believe from the evidence in this case that William Morton died seized and possessed of a tract of land called "Holloing Point," situated in Calvert County, and containing about 1,234 acres ; that said tract of land was devised by said Morton to his wife, Catherine, during her life, and then to his three children, Margaret E., Rachel A. E., who intermarried with a certain P. A. Bowen, and Mary C., who intermarried with a certain Henry E. Morton, to be equally divided between them ; that the metes and bounds of this tract of land, were, in the year 1868, determined by commissioners appointed to mark and bound said land ; that the said land was afterwards divided among the said Margaret E., Rachel A. E., and Mary C.; that one of said divisions was conveyed to Margaret E. by the said Rachel A. E. and Mary C., and their husbands respectively, by deed dated the 3rd day of December, 1869, that said division conveyed as aforesaid, is the land mentioned in the declaration in this cause ; then the plaintiff is entitled to recover, provided the place whereon the trespass was committed, shall be found to be within the metes and bounds of said division properly located.

2. That proper location means the running out and laying down the said division with the greatest degree of certainty, according to the deeds.

Wood *vs.* Ramsey.

3. That the proper mode of locating the divisional line between the land of Mrs. P. A. Bowen and the land of Wood, mentioned in these proceedings, is to find the variation of the compass since the original divisions between the said lands were made, [and starting from the granite stone marked with figure "2," if the jury believe the granite stone aforesaid was placed at its present location by authority of the commissioners appointed to mark and bound said land, and about the time said marking and bounding was done; and running, with such allowance for the variation as the jury may find proper, in a course north $\frac{3}{4}$°, east $108\frac{1}{2}$ perches; then starting from the point on the Patuxent river from which the original divisional line was run, as gathered by the jury from the evidence in this case; thence running S. $88\frac{1}{2}$°, E. for the distance of 160 perches, and thence in a straight line to the end of the first course herein.]

The defendant offered the following prayer:

If the jury believe from the evidence in this case, that the lines located upon the surveyor's return, and the plats herewith returned, as the broken lines, are embraced in the courses and distances of a tract of land described in the deed from Henry E. Morton and others to R. A. E. Bowen, dated the 3rd day of December, 1869, and if they believe that said lines were run with the proper variation of the compass, then the plaintiff cannot recover in this case.

The Court (BROOKE and CRANE, J.) granted the plaintiff's first and second prayers, as also the defendant's prayer, and granted the third prayer of the plaintiff after modifying it by striking out the part contained in brackets. The third prayer as granted was as follows:

3. That the proper mode of locating the divisional line between the land of Mrs. P. A. Bowen and the land of Wood, mentioned in these proceedings, is to find the

variation of the compass since the original divisions between the said lands were made.

The plaintiff excepted, and the verdict and judgment being against him, he took this appeal.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and McSHERRY, J.

*John B. Gray*, and *Daniel R. Magruder*, for the appellant.

The Court erred in rejecting the plaintiff's third prayer, because it presented the true mode of making the location of the dividing line, and the plaintiff had a right to an instruction on that point, and the instruction granted by the Court in lieu of it did not cover the point. A party has a right to have a jury instructed upon a particular point, and it is error to refuse it. *State vs. Hammond*, 6 *G. & J.*, 157; *Parkhurst vs. N. C. R. R. Co.*, 19 *Md.*, 472; *Whiteford vs. Burckmyer*, &c., 1 *Gill*, 143; *Birney vs. N. Y. & W. Tel. Co.*, 18 *Md.*, 341, 356. Where the Court volunteers an instruction in lieu of the one offered, it must cover the point or question raised, or is erroneous. *Snively vs. Fahnestock*, 18 *Md.*, 391. A modification must cover the point presented by the prayer, and be reconciled with it. *Harrison vs. Mayor*, &c., 1 *Gill*, 280.

This was not so, and led to no conclusion, and tended to confuse and embarrass the jury. *Balto. & Ohio R. R. Co. vs. Resley*, 14 *Md.*, 442.

The defendant's prayer left the jury to find the *locus in quo* to be within Mrs. Bowen's lines, contrary to the express terms of her deed, as located, to the calls therein, and to the proof, and was wholly unsupported by any proper proof in the case, and it was therefore error in the Court to grant it—(and it is to be noted that the prayer was objected to on the ground that it was not supported by proof.) *Barger vs. Collins*, 7 *H. & J.*, 220; *Riggin vs.*

Wood *vs.* Ramsey.

*Papatsco Ins. Co.,* 7 *H. & J.,* 295; *Ches. Ins. Co. vs. Allegre,* 2 *G. & J.,* 164; *Walter vs. Alexander,* 2 *Gill,* 204; *Gaither vs. Myrick,* 9 *Md.,* 118.

It left the jury to construe the deed, which is a question of law for the Court. *Hammond vs. Ridgely,* 5 *H. & J.,* 245.

The plaintiff's right to recover was clear, and he could have been prevented from recovering only by the erroneous instructions granted, and the failure to instruct properly upon the points at issue.

*John P. Briscoe,* and *David S. Briscoe,* for the appellee.

The granting of the plaintiff's third prayer would have taken the case from the jury and decided that the plaintiff's location was correct, and left nothing to have been argued on location. *Revised Code, Art.* 64, *sec.* 26; *Clary vs. Kimmell,* 18 *Md.,* 246.

The first and second prayers of the plaintiff contained the proper instructions. The plaintiff therefore was not damaged by the rejection of the third prayer. *Parker vs. Wallis,* 60 *Md.,* 17.

The plaintiff made three locations, neither of which coincided with his deed, or is correct. And then asked the Court to instruct the jury that one of three locations was correct, without saying which. This authorized the jury to find one of three distinct propositions of fact, while there was conflict of evidence as to the correctness of said locations. *Whiteford vs. Burckmyer and Adams,* 1 *Gill,* 152, &c.

This was erroneous. The first location is not in accordance with the plaintiff's deed, because after they reach stake F on the river shore, they assume a line by going with a straight line, stakes E and G, which is not authorized by the deed. Wood's testimony shows that stake G was the point they should have reached, yet they came out at stake F.

The location began at stake A, at the end of 108½ perches from granite stone No. 2, and finished at stake F. The plaintiff then admits that said location was not correct, and reverses the line for a second location, beginning at stake G, according to *his* testimony, and came out at stake I, about 102 perches from granite stone No. 2. He finds that the second line is not correct, and then joins stake A with stake H, which is not authorized by deed or evidence.

The lines run by plaintiff, or his deed, or his evidence, are wrong, because they conflict.

The plaintiff must recover on the strength of his own title, or actual possession. *Parker vs. Wallis,* 60 *Md.,* 17, *&c.*

The plaintiff must locate the place of the trespass, and show it to be within the lines of the land on which he alleges the act to have been committed. *Houck vs. Loveall,* 8 *Md.,* 69; *Funk vs. Hughes,* 5 *Gill,* 315.

The defendant's prayer is a proper instruction. The jury was told that if they believed that the *locus in quo,* the place where the trespass was committed, was in that part of the land embraced within the lines of the deed to R. A. E. Bowen, then the plaintiff could not recover if those lines had been properly located. The defendant's deed calls for fifty-eight perches from the corner of Zach. Bowen's land, a governing object which controls the course and distance. *Friend vs. Friend,* 64 *Md.,* 332.

The evidence tended to show that stake S was the proper location of the said corner. This was a material and imperative call, which must control the survey. *Friend vs. Friend,* 64 *Md.,* 331; *Koch vs. Maryland Coal Co.,* 68 *Md.,* 125.

The proof showed that in the original survey the forked gum tree, the spring, the black oak tree, the wash, the apple tree and the fence marked on the plat, were objects in their present location when the survey was first made.

The deed to the defendant's landlord calls for a stake upon the shore of the Patuxent river, near the water-fence, &c. And the proof showed that stake P was the proper location of the stake mentioned in defendant's deed.

These were facts which the defendant's prayer submitted to the jury to find.

IRVING, J., delivered the opinion of the Court.

This is an action of trespass *quare clausum fregit,* and the controversy seems to turn wholly on the proper location of the divisional line between the parties. William Morton devised a tract of land, containing twelve hundred and thirty-four acres, to his wife for life, and then to be equally divided between three children. The widow died, and the tenants in common executed deeds of partition to each other. The appellant and the landlord of the appellee own parcels which are supposed to be coterminous along the line where the trespass is alleged to have been committed; in fact, for the distance of five hundred and ten perches, comprised in only two lines. The deeds bear the same date; that is, the deed of the appellant's predecessor in title, and the deed of appellee's landlord were executed at the same time, as partition deeds, so that neither can take priority over, and be superior to, the other as a title paper; but they must be reconciled.

The plaintiff declared for trespass upon a tract of land conveyed to him by George W. Tinges and George H. Sargeant, trustees, dated the 28th December, 1883. The grantors were trustees appointed by the will of Margaret E. Morton, to whom one of the deeds of partition, executed on the 3rd of December, eighteen hundred and sixty-nine, was given. These trustees conveyed to the appellant by courses and distances the same land, and by the same description and calls as are own

in Margaret E. Morton's deed from her co-tenants in common, which is in evidence. By comparing that deed and the deed of the defendant (the appellee) we find that the third and fourth course and distance of Margaret E. Morton's deed, and the first and second course and distance of the appellee's deed make the divisional line between the litigants. The distances are the same in each case, and the courses are the reverse of each other. The call at the end of the fourth course of the appellant's deed, is the beginning of Mrs. Bowen's deed, (Mrs. Bowen being the defendant's landlord,) and in each deed is described in the same words, or in the same way, to identify it as the same point, viz., "a stake upon the shore of the Patuxent river near a water-fence, three perches from a stake at the beginning of the twenty-eighth course of the survey made as aforesaid by the commissioners to mark and bound said land." The deeds of partition recited the marking and bounding of William Morton's land by commissioners appointed by the Circuit Court for Calvert County, after the death of Wm. Morton.

Upon application of appellant a warrant of resurvey was issued, and sundry locations were made by each side, which are in the record. The plaintiff began the location of his deed at the end of the first line of his deed, as he claimed it to be, at a granite stone No. 2, set up by the commissioners, to mark and bound the land of William Morton, which seems to have been conceded as a boundary of the whole tract of William Morton; but the record evidence of that marking and bounding, appears by the proof to have been destroyed by fire. From that granite stone, the plaintiff (the appellant) after allowing for variation of the needle, ran the second and third lines of his deed by the deed; and then finding the fourth course would not take him to what he claimed to be the *call* on the Patuxent river, he ran the fourth line without respect to the course or distance, to

the point designated on the plats as letter "P," which he claimed as the call, and of which he offered some evidence, tending to show it was the call. The appellee claims that the call on the Patuxent river, mentioned as the beginning of his deed and the end of the fourth line of appellant's deed, is at a different place, and offered evidence tending so to prove. From this beginning (as he claimed) of his deed, he ran the divisional lines between himself and the appellant so as, according to his contention, to show there was no trespass. The verdict was for the appellee; and the appellant now contends that there was error in rejecting his third prayer as offered, in granting only one portion thereof, and in granting the defendant's prayer.

We think the appellant has no ground to complain of the rulings on his behalf. His first and second prayers, which were granted, certainly seem to have given him all he was entitled to claim. If he could satisfy the jury that his location of the point on Patuxent river was where he claimed his fourth line ended and the appellee's deed began, then, under the instruction granted him, the jury could find his location accurate, and give him the verdict, if they also found his starting point right.

The third instruction, in lieu of his third prayer, could only be understood as saying that proper location involved a proper allowance for the variation of the needle. It could not mislead; but though, in effect, the same statement was in the third prayer, it was coupled with a proposition which could not be assented to as stated. The prayer assumed, and asked the Court to assume, that the first line of his location was properly located, and that granite stone No. 2 was the proper beginning of the second line of his deed; and then asked the jury to be told that the true way of finding the divisional line, was to take the first line of his location

as *established;* and then to skip from its end to the river, and finding the common point on the Patuxent river, (which was the end of his fourth line, and the beginning of the appellee's deed,) reverse his fourth line, for the space of one hundred and sixty perches to a point where a stake with eight notches was set up according to the deeds when originally located, but which can not now be found, and thence by a straight line to the end of the first course and line from granite stone No. 2, which he had located, thus treating the end of that located line as if it was an imperative call, which was to be gratified by total disregard of course and distance when he left the point where the stake with eight notches is supposed to have stood, and which is named in his deed as the end of the line. It is plain that the Court could not grant that instruction. Indeed, he did not need it, and was not injured by its rejection, for his location of his deed included the *locus in quo,* and if the jury found that location correct, he was entitled to recover, otherwise not. If his deed was found to be properly located, it also established the defendant's lines. Another mode of establishing the divisional lines existed. Establishing the common call on the Patuxent, and then running the two first lines of defendant's deed, which would be reversing the fourth and third lines of the appellant's deed, ought to give the true divisional line between the contestants; for the deeds were intended, on those lines, to be the reverse of each other, and leave no intervening land.

If, by running the divisional lines in that way, certain objects well known and established as being on the divisional line as originally run, or near it, are not touched or found near the line thus run, there may be reason for questioning the correctness of the starting point; or the correctness, or accuracy of the original survey, or of this one; or the correctness of the variation of the

needle now allowed by the surveyor ; or it may raise doubt whether there was not error made in entering the course in the deeds ; but it cannot discredit that method of establishing the true divisional line between the parties. Metes and bounds always control courses and distances. Material and certain calls when they can be found will invariably control. *Wilson vs. Inloes*, 6 *Gill*, 92 ; *Friend vs. Friend*, 64 *Md.*, 331. If the call can not be found then the course and distance must prevail. *Ib.* Therefore if the point on the Patuxent river can not be fixed as the imperative call for the plaintiff's deed, so that it can be located with certainty, of course it must be located by course and distance, with proper variation of the needle, and that would establish the line of division.

The appellee's prayer can not be regarded as the converse of the appellant's prayers. It put his side of the case to the jury in a most misleading way ; for it relied on the location of the divisional line as he located it, the correctness of which does not seem to be supported by evidence ; which is the appellant's contention, as certified in the bill of exceptions.

He begins his first location at a point designated on the plats as stake *M*. In fact this point is on the line first located by appellant, but why defendant starts at that point is not explained ; and there is no evidence touching it. It appears, therefore, to be an *arbitrary* starting point, from which he runs a line corresponding in course and distance with the third line of appellant's deed, and from the end of that line he draws a straight line to what he claims the call to be on Patuxent river. For a second location he starts at the call on the river, as he claims it, and offers proof thereof, and then, running the first course and distance of his deed from the end of that line, he runs a straight line to stake M, as if it were an imperative call, justifying departure from the course. This is not locating the first *two* lines of

his deed; and the jury could not properly be told that if they found those lines "to be embraced in the courses and distances of the land described" in his deed, "the plaintiff could not recover." There is a plain variance from his deed and no evidence to justify it. The whole controversy and alleged trespass are along the line from stake "M" and the point where the stake with eight notches once stood. The true location of that line was the thing to be settled. That prayer allowed the jury to consider a location which involves the assumption of a bounder at stake "M," in each location, of which there is no proof. In making his second location, if the appellee had made his first and second lines conform to his deed, making due allowance for the variation of the needle, and had confined his prayer to that location, it would have been unexceptionable. For the error in granting the defendant's prayer as framed, the judgment must be reversed.

*Judgment reversed, and
new trial ordered.*

(Decided 10th May, 1889.)