(Decided 20th June, 1890.)

---

EZRA LIPPINCOTT, S. ROBINSON COALE, JOSEPH C. TOWNSEND, and GEORGE F. CORSE, Trustees *vs.* WILLIAM P. HARVEY.

*Dedication of Streets—Servitude—Sale of Lots by Plat.*

Where an owner lays off land in lots, and sells them as bounding on certain streets, which are sufficiently designated, the streets so called for are held as dedicated to the public, and the vendor is bound by an implied covenant to the purchaser, to keep them open; and the purchaser takes the lot he buys, subject to the servitude upon so much of the bed of the street as goes to him under his purchase, in fee.

Lippincott, *et al. vs.* Harvey.

But to impose such a servitude upon a purchaser, for the benefit of the other lots of the vendor, where such servitude will be injurious to the purchaser, it ought to appear that the reservation was unequivocally and unambiguously made, and that the purchaser who resists it ought not to have been mistaken as to what he was buying.

It is not enough that the vendor intended by his plat to say that such and such lines on the plat indicate streets which he designs shall remain open for common use. He must do that with respect to it which will make his vendees understand his purpose, and leave them without excuse if they do not.

There must be mutual understanding to effect an enforceable contract, or the terms and conditions of a sale must be so clear that a purchaser is estopped from saying he did not understand them.

Where the servitude is a burdensome one, only strict necessity will raise the implication of its reservation. Great convenience is not enough.

Trustees for the sale of a tract of land, divided it up into lots, and made a plat thereof, and sold by the plat. The plat contained dotted lines which the trustees contend indicated streets or avenues. The advertisement of the sale, in its heading said "by plat." No reference was made to any streets or avenues laid out for the use of the lots. At the sale the auctioneer exhibited the plat, and copies of it were distributed; but he made no announcement of any streets or avenues being opened for the common benefit of purchasers, and said nothing about the marks on the plat indicating street-ways. At the time of the sale there were no visible marks indicating where any proposed street was to be laid out. Each lot was offered and struck off where it was located, but there was nothing to indicate its situation, except the plat on which it was drawn. The trustees with their report of sale filed the plat as part of it, but made no mention of streets or avenues laid off and dedicated; and gave no courses and distances for the lots, which could only be ascertained by applying instruments to the plat. Some of the lots remained unsold, and on a bill for the use and benefit of said lots, filed by the trustees against a purchaser at said sale, seeking to have the streets or avenues dotted on the plat declared dedicated to general use, and to restrain said purchaser from erecting a fence in the middle of one of them, it was HELD:

That the facts were insufficient to establish a case of dedication.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., IRVING, BRYAN, and McSHERRY, J.

*David G. McIntosh,* for the appellants.

*Edgar G. Miller, Jr.,* and *John I. Yellott,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellants are trustees, under a deed from James L. Sutton, for the sale of certain lands in Baltimore County. They divided the land up into lots of various sizes, and made a plat thereof, and sold by the plat. The land adjoined Lake avenue, and from that avenue there was a private approach, through a gate, to the mansion house on the land. This roadway was wholly on the Sutton land; and on the east of it and adjoining it was property belonging to Joseph W. Jenkins, Sen. The land was divided into nine lots numbered from 1 to 9. Between lots numbered (1, 7 and 6) one, seven and six, and the land of Jos. W. Jenkins, Senior, and lots No. (2 and 3) two and three on the other side, were dotted lines, between which were written the words "Sutton avenue." These dotted lines ended at lot No. 5 on the north, and terminated on the plat on the private road leading to the Sutton mansion, which was indicated on the plat by black drawn lines, not so wide apart, and ending at Lake avenue. Between the lots 2 and 3 were dotted lines extending westward from the dotted lines marked "Sutton avenue," to the avenue leading to Lake Roland. Between these lines

are written the word "Avenue." Between lots 6 and 7 running eastward from the lines marked "Sutton avenue" to "Proposed avenue" on the east of the property, were dotted lines, with nothing written between them. These described dotted lines marked "Sutton avenue" and "Avenue," and marked nothing, the appellants contend represented streets or "avenues" intended always to remain open for the use of all the purchasers of the lots offered for sale. The advertisement of the sale in "its heading" says "by plat." No reference is made to any streets or avenues laid out for the use of the lots. The lots are not described as binding on any such streets or avenues. No. 2 is described as adjoining and binding on an avenue leading from Lake avenue to Lake Roland, and No. 6 is described as adjoining and "binding on the proposed extension of Roland avenue." But neither of these avenues referred to, and which are laid down on the plat belong to this property. At the sale the auctioneer says he simply exhibited the plat, and copies of it were distributed; but that he made no announcement of any streets or avenues being opened for the common benefit of purchasers, nor said any thing of or about the marks on the map indicating street ways; and the auctioneer is fully corroborated by other witnesses on this point. The trustees' report of sale mentions five lots as sold; three to appellee (Nos. 1, 7 and 9,) No. 2 to Joseph W. Jenkins, Jr., and No. 4 to Albert L. Gorter. Four of the lots are unsold; and it is for their use and benefit that the trustees, by the bill in this cause, are seeking to have the streets or avenues dotted on the plat declared dedicated to general use, and to restrain the appellee from erecting a fence in the middle of one of them.

At the time of the sale there were no stakes, plowed ground, furrows, or any visible marks indicating where

any proposed street was to be laid out. It was all one grassy plot. Each lot was offered and struck off where it was located; but there was nothing to indicate its situation except the plat on which it was drawn. The plat had a scale upon it indicating upon what scale it was constructed, but nowhere on the plat did it appear what width it was proposed to have the streets which were dotted on the plat. The trustees' report simply files the plat as part of it, but makes no mention of streets or avenues laid off and dedicated. It gives no courses and distances for the lots, even, which could only be ascertained by applying instruments to the plat. The advertisement, the plat, the trustees' report are all indefinite; but the appellants insist that, having bought by the plat, the appellee must be held to have fully understood that the streets as indicated on the plat, were to be opened and kept open for the common use of all the lots designated on the plat, and to be estopped from denying such dedication and use. A deed has been executed to the appellee calling for the centre of "Sutton avenue" "laid off thirty feet wide;" but when it was executed an agreement under seal was made by the parties that this should not affect the question upon which they were in controversy, viz., whether there was to be any avenue, and the appellee was bound to assent to it, which question was to be submitted to the proper Court. This agreement is made the basis of the claim to jurisdiction on the part of the Court of equity; and although that jurisdiction is denied by the appellee, we shall assume for the purposes of this decision, without so expressly deciding, that the Circuit Court was right in sustaining jurisdiction, as we agree with the Court below in dismissing the bill upon the facts.

In affirming the decree of the Circuit Court dismissing the plaintiffs' bill, we are not to be understood as

Lippincott, *et al. vs.* Harvey.

departing in any degree from the principles decided in *White vs. Flannigan,* 1 *Md.,* 525, which case without doubt lays down the law as it prevails in this State, viz., Where an owner lays off land in lots and sells them as bounding on certain streets which are sufficiently designated, the streets so-called for are held as dedicated to the public, and the *vendor* is *bound* by an implied covenant to the purchaser to keep them open, and the purchaser takes the lot he buys, subject to the servitude upon so much of the bed of the street as goes to him under his purchase, in fee.

The real question in this case, therefore, is, whether, as between the appellants (the grantors or vendors,) and the appellee (the purchaser of certain lots,) the sale was made in such way as by necessary implication to reserve to the vendor for the use of his other lots, the right to have these several ways indicated by dotted lines opened and kept open for the common use of themselves and their subsequent vendees, and the appellee.

To impose a servitude of such character as this "Sutton avenue" is shown to be, and as injurious to the appellee as the evidence shows it is, it ought to appear that the reservation was unequivocally and unambiguously made, and that the purchaser who resists ought not to have been mistaken as to what he was buying. It is not enough that the *vendor* intended by his *plat* to say that such and such lines on the plat indicate streets which he designs shall remain open for common use. He must do that with respect to it which will make his vendees understand his purpose, and leave them without excuse if they do not. There must be mutual understanding in order to effect an enforceable contract; or the terms and conditions of a sale must be so clear that a purchaser is estopped from saying he did not understand them. The appellee evidently did not understand that these lots were sold with the

condition that streets were dedicated by the plat to the common use of all purchasers of lots, and were to be regarded as if already opened and prepared for travel. He says he would not have purchased, if he had so understood. Mr. Jenkins, who purchased lot No. 2, on the other side of the so-called Sutton avenue, testifies that he did not so understand the terms, and he would not have bought had he understood that the so-called "Sutton avenue" was to be unavoidably opened and kept open. It appears, therefore, that the only purchasers of lots, except Mr. Gorter, were misled into believing that the dotted lines only indicated streets that could be opened if the purchasers should desire. As we have already stated, the auctioneer said nothing about streets being opened through the lots, or for their benefit, and nothing was said in the advertisement about it. The appellants rest their contention entirely on the plat which was exhibited, and which the appellee certainly saw. That, from our description of it, will clearly appear was indefinite; and, without any description accompanying its dotted lines as to indicate plainly and unambiguously what was intended. There is not that certainty on the face of the plat which ought to be held to conclude a purchaser from denying the appellants' contention in respect to it. Two surveyors of long experience testify that the lines dotted on the plat and marked "Sutton avenue" do not indicate an avenue all the way to Lake avenue, but, according to the way they are marked on the plat, indicate that it stops several hundred feet short of Lake avenue. If experts so understand the plat, it is not singular that the appellee, and Mr. Jenkins, who are *non experts*, so far as appears, should have supposed there was no agreement in the contract of sale that these streets should be opened and remain open. The testimony clearly shows that for "Sutton avenue" to

Lippincott, *et al. vs.* Harvey..

be opened and remain open for common use would greatly injure the appellee's lot No. 1. It would seriously diminish its desirableness and value. Witnesses vary in their estimates of the extent of the injury. One of the appellants testifies that in his opinion it would lessen the value of lot No. 1 to the extent of five thousand dollars, or nearly one-half the sum he paid for it. This is the largest estimate, but it is the opinion of one of the appellants, who is seeking to bind the appellee to a servitude which he resists, and insists that he never bought subject to. It is a burdensome and very prejudicial servitude; and, to fasten it on the appellee's land in favor of the vendors, there should be clearer proof of its unequivocal reservation than we can find in this case.

The rule is laid down in numerous authorities that, where the servitude is a burdensome one, only strict necessity will raise the implication of its reservation. "Great convenience is not enough." 2 *Wait's Actions and Defences*, 668-9-70, and authorities there cited. *Mitchell vs. Seipel*, 53 *Md.*, 251. It would be very convenient, beyond a doubt, for the appellants to have a perpetual right of way and outlet in what is called "Sutton avenue" on the plat; but it is manifestly not a way of necessity. Appellants' unsold land consists of lots 3, 5, 6 and 8, as described by lines on the plat. These form one body of land extending from the avenue leading to Lake Roland on one side, and to "Proposed avenue" on the other side. They have therefore an excellent outlet by the avenue on the west, leading southward from Lake Roland to Lake avenue. It may necessitate some new division of the land, and reconstruction of the plat as to the unsold lots; but this can be done without injury to anybody; whilst to grant the prayer of their bill would inflict great and lasting injury upon the appellee and bind him to a condition

and situation as respects his lots which he did not contemplate when he purchased.   The appellants have received his money, and had their sale ratified by the Court, we are informed, (though that does not appear in the record,) and have agreed to submit the question to the Court whether the contract of sale compels appellee to hold his purchases subject to the avenues for which appellants contend.   As respects the *appellants* and their unsold lots, we are clearly of opinion, for the reasons already given, that the appellee holds the lots he purchased discharged of the claim which the appellants have set up.   The decree of the Circuit Court dismissing the bill will therefore be affirmed.

<em>Decree affirmed, and<br>cause remanded.</em>

(Decided 20th June, 1890.)