(Decided January 4th, 1898).

## JOSEPH H. NEAL *vs.* WM. D. HOPKINS.

*Ejectment—Evidence—Defence of Title in a Third Party—Location of Lines—Dedication of Street—Conflict Between Deed and Contract of Sale.*

When a party who has a life-estate in a tract of land agrees that the same shall be sold under a bill in equity filed by the remaindermen, and consents to receive in satisfaction a portion of the proceeds of sale, the purchaser of the land under the decree acquires a clear title.

If there being any conflict between the provisions of a deed conveying land and the terms of a previously executed contract to convey the same, the deed controls as the last expression of the will of the parties.

In an action of ejectment where the question is as to the true location

of a line, declarations concerning the same made by one of the parties against his interest are admissible.

When defence is taken upon warrant in an action of ejectment, evidence as to where a fence was placed is not admissible, unless the same be located on the plats.

Plaintiff conveyed to defendant a tract of land, one line of which was described as beginning on a street which had not been opened but which had been dedicated by the plaintiff by conveyances to other parties. The outlines of the street had not been described by a map. Defendant enclosed his lot but plaintiff contended that in so doing he had not followed the true line of the street and plaintiff sued in ejectment. The chief question was as to the true width and location of the unopened street.  *Held*, that evidence of the acts of persons owning land abutting on the street prior to the date of defendant's deed was admissible to show what had been dedicated, but that what the plaintiff did after the date of the deed was not competent evidence because it could throw no light on the question as to the location of the street when defendant bought the property.

A prayer which allows the jury, in an action of ejectment, to ignore an imperative call in a deed is erroneous.

When the place of beginning in a deed is clearly designated, parol evidence as to the understanding of the parties concerning the same is not admissible.

The making of a sidewalk and the planting of trees by the owner of land along the line of an unopened and projected street are not in themselves sufficient to establish a dedication of the same, but such facts are admissible in evidence in connection with other circumstances to show a dedication.

Appeal from the Circuit Court for Dorchester County (LLOYD, J.)   William D. Hopkins, the plaintiff below and the appellee here, sold to Joseph H. Neal a parcel of land lying within the corporate limits of Cambridge.   Years previous to such sale a street called Willis street had been opened at right angles to a street called Glasgow street, which it crossed, and was then extended for a short distance, northward, toward the Choptank River.   Neal's lot was near the river, but at the time he purchased the same Willis street had not been extended thereto.   Having received a deed from Hopkins, Neal enclosed his lot according to his view of his rights thereunder.   In thus enclosing the same Neal placed a fence on the eastward side of his lot, running,

as he contends, with the northwestward side or line of Willis street extended to the Choptank River. But Hopkins claims that Neal placed said fence, not on the proper northwestward line or side of Willis street, extended, but on the contrary, that he embraced within his enclosure a strip of land not included within the parcel of land bought by him. Hopkins brought an action of ejectment to recover the same from Neal, and from a judgment in his favor this appeal was taken.

In the fifth exception the defendant offered to show that on the day he and the plaintiff bargained for the land described in the said deed between them, and at the very time that the price was agreed on and the bargain finally struck, the same being on the day before the execution of said deed, the two were standing on the spot marked red letter L on the plat, and the plaintiff, pointing out the lamp-post on the north corner of Locust and Willis streets as the point of beginning of the northwest line of Willis street, said that the said line extended to the Choptank River, would, he thought, about cross said spot where they were standing, and that the cedars and ditch, and old gate before them (all delineated on the plat) would certainly be within his, the defendant's lines, if he bought the lot offered for sale and which is described in said deed, and thereupon the defendant agreed to buy and did buy by the northwest line of Willis street extended, as subsequently embodied in said deed from the plaintiff to the defendant. But the Court refused to permit said testimony to go to the jury, to which refusal the defendant objected.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, and BOYD JJ. (December 6, 1897).

*John R. Pattison* and *Clement Sullivane* (with whom was *Sewell T. Milbourne* on the brief), for the appellant.

*Alonzo L. Miles* and *Thomas W. Simmons*, for the appellee.

PAGE, J., delivered the opinion of the Court.

This is an action of ejectment brought by the appellee against the appellant to recover certain property in the town of Cambridge.   A warrant of resurvey was issued and the certificate of the survey and plats were made and returned, and are now contained in the record.  The plaintiff in establishing his case offered in evidence certain deeds to which no objection as to location was made ; and also proof to show ouster on the part of the defendant.  The first exception and the plaintiff's fourth prayer related to the measure of damages, and inasmuch as the verdict of the jury was for nominal damages only, those will require no attention in this opinion.

After the plaintiff had rested his case, the defendant asked the Court to instruct the jury that there was no legally sufficient evidence to entitle the plaintiff to recover ; the Court refused so to do and this constitutes the defendant's second exception.   The defendant claims this was error, because he alleges the proof shows that one William Jackson still retains a life-estate in the property.  It appears from the proceedings set out in the record of a cause in the Circuit Court of Dorchester County, that in 1853 a certain Henrietta N. Jackson being seized in remainder of the land in question, by her next friend filed a bill in equity to sell the property for better investment.   The life-tenant was not made a party by the bill, but during the progress of the cause he filed a paper by which he agreed "that the said real estate shall be sold under the direction of the Court, free from any incumbrance of my (his) life-estate therein, and that in lieu thereof I (he) will accept such proportion of the proceeds of sale of said estate as this Court shall judge to be reasonable."   The Court thereupon decreed that the property be sold, appointed Thomas W. Anderson trustee to make the sale, and directed him on payment of the purchase money to convey the property to the purchaser, discharged of all claims " of the parties to this cause, and of William Jackson, who has assented to the sale of his interest

therein." The property was accordingly sold, and out of the proceeds thereof William Jackson was awarded and received a sum of money deemed by the Court to be reasonable for his interest. The deed of the trustee Anderson conveys "all the right and title of all the *parties* to the aforesaid cause," in and to, &c. The appellant on these facts claims that the interest of William Jackson did not pass, but is still outstanding. Now, when a defendant in ejectment relies upon an outstanding title in a third party, it must be such a title that such third party could recover against either party. *Georges Creek C. & I. Co.* v. *Detmold,* 1 Md. 234. Here Jackson voluntarily appeared to the cause, agreed that the property should be sold, and received a share of the proceeds of sale. Under these circumstances he must be held as a party. It would violate every principle of equity and good faith to allow him now to set up any claim to the land. *Farmers' Bank* v. *Thomas,* 37 Md. 258; *Thomas* v. *Farmers' Bank,* 46 Md. 56.

The defendant, to sustain the issues on his part, having offered the deed from the plaintiff under which he claims title, proposed to follow it up by a contract in writing relating to the sale of property between himself and plaintiff made on the same day with the deed; but the Court refused to allow it to go to the jury, and this constitutes the defendant's third and fourth exceptions. It is clear from the terms of the contract that it was entered into before the execution of the deed. The parties agree therein for the sale of certain property for $1,400, part to be paid "on the delivery of a good and sufficient deed," and the residue in two equal annual instalments. Now, if there be a difference between the deed and this contract (and that there is, is not obvious to us); which paper is to control—the deed or the agreement? If there were no other reason it would seem proper that the last and effectual expression of the parties should prevail. The deed contains no ambiguous phrases, its language is clear and unmistakable, there can be no doubt as to its purport, and it is a familiar rule that the provisions of the deed

must speak for themselves. If it should be conceded as contended, that the deed and the agreement being both under seal, are of equal dignity, the last executed must control the first. In *Dorsey* v. *Smith*, 7 Har. & Johns. 363, it was said, " if the two papers differ, the last must be regarded as a modification of the first, and being the last stipulation must be considered as binding on the parties." *Worthington* v. *Bullitt*, 6 Md. 196. We find no error in the ruling of the Court set out in these exceptions.

The testimony set out in the fifth exception should have been admitted. It was a declaration by the plaintiff against his interest and tended to throw light upon the true location of Willis street extended. The issue presented to the jury was the location of the point where Willis street extended would intersect School street extended—and the location of School street being admitted, the controversy was over the proper location of Willis street extended. Willis street eastwardly from Locust street for some distance had been dedicated to the public by the sale of certain lots binding thereon, and to the extent of these lots had been opened, but so far as the record shows had never been accepted by the municipality. From Glasgow street on the west across Locust street for a distance of 160 feet it was a clearly defined street with fences and trees to mark its line. If the lines of the street so marked were extended in straight lines it would support the contention of the defendant. The defendant, after offering the deeds of the lotholders along that portion of Willis street to show the outlines of Willis street, introduced Charles C. Kleckner, the husband of Fannie L. Kleckner, the owner of the lot designated on the plat as the Kleckner lot ; he testified that he erected a fence along the front of his lot on Willis street ; later on he moved it back some seven feet in consequence of an agreement to widen Willis street ; and later still moved it back to its original position on Willis street where it now stands ; and that he did so because they expected "to get the Commissioners to pay Mr. Perry to move his fence back also,

but the said authorities refused." On cross-examination he testified it was while his fence was set back that Dr. Mace bought the lot to the eastward of his lot and built the fence in line with that of witness, it being about seven feet from the east corner of witness's lot. The defendant objected to this on the ground that Mace's fence was not located on the plat, but the Court overruled the objection.

The case of *Carroll* v. *Norwood*, 1 H. & J. 177, is decisive on this point, which is raised in the sixth exception. There the defendant offered evidence of the place where an ancient tree stood, it being on the line of a fence which was located on the plats ; but the Court held the evidence inadmissible inasmuch as the tree was not located, though the fence on the line of which it stood was.

The evidence objected to in the seventh and eighth exceptions was proper to go to the jury. The question being as to the location of Willis street, and its outlines not having been designated by bounders or plats, all acts prior to the date of defendant's deed of persons owning abutting property were proper to go to the jury to be considered by them in determining what had been dedicated to the public. 9th Exception. The deed to John Mace from the plaintiff designates the place of beginning to be " on the North side of Willis street, beginning for outbounds east 160 feet from Locust street extended, to the east corner of lot of ground owned by C. C. Kleckner, and running with Willis street," &c. The point must be on Willis street, 160 feet from Locust street, and at the east corner of the lot owned by Kleckner. It was an attempt to vary or explain the clear meaning of the deed by parol, to permit testimony to go to the jury as to what the understanding of the parties was.

10th Exception. Foxwell's deed is dated 25th January, 1896. What the plaintiff did, after the deed to the defendant, that is, after Oct. 11th, 1895, was not evidence. It could throw no light upon the question as to where Willis street was when the defendant bought the property.

The Court granted the 1st, 2nd and 3rd prayers on be-

half of the plaintiff and rejected all asked for by the defend-
ant, and this forms the 11th exception.    The plaintiff's first
prayer was not attacked in argument, and we treat it as
being conceded.    By the second of the plaintiff's prayers,
the jury was directed that if they found the deed of Hop-
kins to Mace, and the said deed described said lot as begin-
ning 160 feet from Locust street to the east corner of Kleck-
ner's lot, and shall further believe that the beginning point
of the Mace lot so conveyed is at the black cross on the
plat and that said deed described said lot as running with
Willis street, &c.    This prayer assumes that by the proper
construction of the Mace deed, the beginning bounder
thereof could be located at the black cross on the plat
which, by reference thereto, appears to be seven feet or
more from the east corner of the Kleckner lot.    That deed,
however, contains an imperative call ; that is, the east cor-
ner of the Kleckner lot, and this must be gratified.    This
prayer permits the jury to ignore this call, and find it to be
at another place.    Moreover, if the true location be at the
east corner of the Kleckner lot, the grant by Hopkins to
Mace could not operate as a dedication further than the line
of the Mace deed which was to begin at the east corner of
the Kleckner lot and along Willis street.    The prayer there-
fore was bad, first, because it authorizes the jury to find a
location of the Mace deed not warranted by its terms ; and
secondly, that it declares that the operation of that deed
was a dedication of Willis street up to a line to be run more
than seven feet from the correct location of the east corner
of the Kleckner lot.    The defendant's first prayer proceeds
upon the theory that if Wm. Hopkins before his grant to
W. D. Hopkins dedicated Willis street by the sale of lots
binding thereon, and afterwards moved his fence within the
limits of the street as so dedicated, it was a mere encroach-
ment on his part, and that the conveyance to Kleckner by
the removal of his fence as described in the evidence, in no
manner changed such direction ; nor did the deed to Mace
nor the erection of the fence on the Foxwell lot by Wm. D.

Hopkins furnish any evidence of a further dedication of Willis street. If the street was dedicated, and its limits determined as far eastwardly as the Kleckner lot, then neither the conveyances to Kleckner nor to Mace altered the direction, because both said deeds call for bounders on the street so dedicated and run with that street extended.

The prayer also asks the Court to rule that the act of W. D. Hopkins in the erection of the fence on the Foxwell lot back from the corner of the street as stated, furnishes no evidence of a further dedication. The Court is not asked here to rule whether this was or was not in itself a dedication; but that it furnished no evidence, &c. The mere removal of a fence, or the making of a sidewalk and planting trees may not in themselves always be sufficient to establish a dedication. They do not amount to a clear act of dedication, but do furnish evidence tending in connection with other facts to prove it. The prayer was therefore properly rejected.

The remaining prayers of the defendant will not be considered in detail. They announce the following proposition : 1st. That the direction and course of Willis street were determined by the line of the lots which the plaintiff, William Hopkins, transferred before the defendant's purchase. 2nd. That the act of Kleckner in moving his fence inward from the street and then back again to the line of the street, did not amount to a further dedication of the street. 3rd. Nor did the act of Hopkins in placing his fence back on the Foxwell lot alter the general direction of Willis street, even though there was a dedication of the sidewalk. 4th. And that if the jury found the street so located when extended would exclude the parcel of ground for which this suit was brought, the defendant would be entitled to the verdict. It is plain Kleckner moved his fence to remain only conditionally ; he states he moved his fence back " expecting to get the Commissioners to get Mr. Perry to move his fence back also, but the authorities refused," and therefore he moved his fence back to its original position. To prove a dedica-

tion the intention must be clearly proved by the facts and circumstances. *McCormick* v. *Mayor, &c.,* 45 Md. 524. The next proposition is, as to the effect of the act of Hopkins in moving the fence back in front of the lot, afterwards sold by him to Irene Foxwell. He states that before the sale to the defendant, he established a gutter and sidewalk in front of the Foxwell lot eastwardly to the barn, planted trees along it up to the fence across Willis street " for the purpose of widening the street." At that time and when the defendant purchased his lot, Willis street had not been opened further eastwardly than this fence ; and from the place where it stood to Choptank River there was an open field. School and Travers streets were also unopened. The Mace lot was the farthest lot from Locust street that had been sold by Hopkins. From the eastern corner of the Mace lot towards the river extended the Foxwell lot, and at the eastern corner of that lot was the fence across the street. So that it appears Willis street from the eastwardly end of the Mace lot to the fence across at the barn was a mere *cul de sac* owned altogether by the plaintiff. It is also in evidence that the gutter and sidewalk below the Mace lot, in front of the Foxwell lot to the barn, at the time of the defendant's purchase, was overgrown with weeds ; and that the barn was the only building between the Mace lot on the northwest and the Gordy lot on the southeast of Willis street and the river. The question is, under these circumstances, did the act of Hopkins in thus laying off a sidewalk, " for the purpose of widening the street," amount to a dedication so as to alter the direction and extent of Willis street.

It must be noted there is no evidence that the lot of the defendants nor any of the lots of other persons were sold with reference to maps or plats. The dedication of Willis street to the extent of the lots of Perry, Kleckner and Mace was effected only on the doctrine of an implied covenant that the street called for by the deeds shall always remain open as a public street. Having thus set apart the street

for a public use, "it would be a violation of good faith to
the public and those who have acquired private property to
revoke the dedication, and for that reason it cannot be done."
*Cincinnati* v. *White*, 6 Peters, 438.    But such dedication
does not create a right of way over all the lands of the ven-
dor, the "true doctrine" being "that the purchaser of a
lot calling to bind on a street, not yet opened by the public
authorities, is entitled to a right of way over it, if it is of the
lands of his vendor to the full extent and dimensions only
until it reaches some other street or public way."    The
dedication "must necessarily be measured by the limits of
the right" the purchaser has acquired by virtue of his grant.
*Hawley's case*, 33 Md. 280; *M. & C. C.* v. Frick, 82 Md.
83.    It is therefore clear that prior to the time of the estab-
lishment of the sidewalk the dedication of Willis street did
not extend further eastwardly from Locust street than the
eastern corner of the Mace lot, no lots binding on Willis
street having been sold by the plaintiff to the east of that
point.    If this be so, the act of plaintiff in constructing the
sidewalk on his own property, at the end of a *cul de sac*, for
the purpose of widening a street that later on he proposed
to dedicate to the public, cannot be regarded as an act from
which to infer that he then intended to appropriate the side-
walk to the public.    Such intention must be clear from all
the circumstances of the case.    *McCormick* v. *City of Balto.*,
45 Md. 523; *Tinges* v. *Baltimore*, 51 Md. 600.    If Willis
street had already been dedicated to the public use east-
wardly from the Mace lot, other questions would arise on
which we do not now pass.    This sidewalk was not estab-
lished under covenants entered into with other parties; it
seems never to have been used by the public or by any one,
for it was overgrown with weeds, and it led not from one
highway to another, but by and along that portion of the
street that the plaintiff had power to close to the entire ex-
tent of the walk, and it ended not at a public street, but at
a fence located on his own land.    It may be conceded that
the plaintiff established the gutter with intent to widen the

street, but as we have said the street itself had not been dedicated as to that part of it at that time, and therefore his intent must be referred to a widening he intended to make in the future when he afterwards came to dedicate the street. To make a valid dedication there would be an intention to dedicate the land to a public use. *M. & C. C.* v. *Fear*, 82 Md. 257; *Barraclough* v. *Johnson*, 8 A. & E. 99. In a word, it seems this sidewalk which led only to the property of the plaintiff, and which up to the time of the purchase of the defendant was not used or indeed capable of being used by the public, was intended for his own use and that of those persons who may have had occasion to visit the property. Under such circumstances, such an act cannot have the effect of changing the general course and direction of Willis street as theretofore it existed.

The third prayer was properly rejected. The deed of the plaintiff was by metes and bounds, and the defendant cannot claim outside his lines. It begins at "a post planted" at the intersection of Willis and School streets; thence northwesterly 500 feet, &c.; thence to a "post planted" on the line of Willis street, &c. Under such a grant the lines of the defendant must stop at Willis street. *Gump* v. *Sibley*, 79 Md. 165.

The fourth and fifth prayers were properly rejected. If the street had been widened and that fact was known to the defendant at the time of his purchase, or if he was chargeable with such notice, it might very seriously affect the contention of the parties.

It follows from what has been said, the judgment must be reversed and a new trial awarded.

> *Judgment reversed and new trial awarded.*

(Decided January 4th, 1898).