## ATLANTIC CONSTRUCTION CORPORATION
### ET AL. *v.* SHADBURN ET AL.

[No. 138, September Term, 1957.]

*Decided March 4, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James C. Burch* and *Michael F. Delea* for appellants.

*H. Emslie Parks,* with whom were *Z. Townsend Parks,
Jr.,* and *Gerald Kerr* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The appellants contest the correctness of a decree of the
Circuit Court of Baltimore City, which held that the appellees
had a right, in common with others, to use an alley binding
on the rear of all of the lots in the block bounded by Alta,
Glenmore, Moyer and Royston Avenues in a subdivision
known as Hamilton Meadows; enjoined the appellants from
blocking said alley; and required the Atlantic Construction
Corporation (Atlantic) to remove from the bed of part of
the alley an obstruction it had placed there in 1952.

Note: The above is a portion of "Agreed Exhibit No. II." The words "Glenmore," "Royston," and "Moyer Avenue" have been added to indicate the location of these avenues.

In 1921, the owners of a tract of land containing 74 acres, which included the land in Exhibit II, laid the same out into lots and streets upon a plat, and recorded the same as a "Plat of Hamilton Meadows." This plat contained no alleys. By *mesne* conveyances, the greater portion of this land passed to the Key Realty Company (Key), and that company, in 1941, filed among the Land Records of Baltimore City a plat entitled "Resubdivision of Part of Hamilton Meadows." Exhibit II above, also, is a portion of this plat. By several different conveyances in 1941 and 1942, Key conveyed to one Krebs lots 1112 to 1123, both inclusive. In the conveyance to Krebs of lots 1122 and 1123, the lots were described by metes and bounds only, and the south side of the 15-foot alley was named as a call, with the use of said alley in common. When Krebs received lot 1121, the lot was described by metes and bounds only, and the north side of a 15-foot alley on the south side and the west side of a 15-foot alley in the rear were named as calls, with the use of *both* alleys in common. There was a similar conveyance when he obtained lots 1112 to 1117. The appellees', Ruskus' and Chmielewskis', properties were included herein. When he received lots 1118, 1119 and 1120, the lots were described by metes and bounds only, with the west side of a 15-foot alley in the rear as a call; and the use of said alley was stated to be in common.

On March 31, 1942, Key conveyed to one Miller lots 1124 to 1136, both inclusive; the conveyance was by lot numbers only with no reference to alleys or reservations. The appellees', Shadburns', property was included herein. In 1944, Key conveyed by metes and bounds description, unto Lloyd E. Mitchell, Inc. (Mitchell), all of the subdivision, but excepted, by describing them by lot numbers, lots 1112 to 1136, both inclusive. In 1951, Mitchell conveyed lots 1108, 1109, 1110 and 1111 unto one Mandell, together with other lots. The conveyance contained a metes and bounds description of the property conveyed and this provision:

"Being lots * * * 1108 to 1111 both inclusive * * *, together with portions of the bed of streets, avenues, rights of way, etc., on which said lots bound, all as shown on the aforesaid plat recorded in Liber M.L.P. 6152 folio 614, etc., and subject to the rights of others in and to so much of said parcels of ground that may be in the beds of streets, avenues, rights of way and reservations as shown on the plat hereinbefore referred to." Thereafter in 1951, Mandell conveyed to Atlantic lots 1108 through 1111, and referred to each lot as being subject to a reservation of 7½ feet in the rear.

The Shadburns obtained their property, parts of lots 1132 and 1133, in 1942 and moved in; the Chmielewskis (parts of lots 1115 and 1116) in 1950; and the appellee, Ruskus, (parts of lots 1114 and 1115) in 1951. All of these deeds referred to the plat and the 15-foot alley in the rear of the lots, with the use thereof in common. The *mesne* conveyances to the owners of these lots prior to the appellees not already named are not contained in the record, but it is reasonable to infer that they contained similar provisions.

The chancellor found from the evidence, and we agree, that the north-south alley and the two east-west alleys were opened (not by the public authorities) and used at least as early as 1942 up until 1952, and there was hard paving of some nature, such as crushed stone or gravel, on parts of said alleys.

In about 1952, Atlantic blocked off and obstructed the alley in the rear of lots 1108 to 1111, both inclusive; and, since then, the present owners of said lots, or some of them, have extended the lawns on their respective properties onto the bed of said alley and have refused the right of ingress and egress over and upon the same unto the appellees.

We shall confine our holding to the alley in the rear of lots 1108, 1109, 1110 and 1111; because it is the only one in dispute in this cause. We think the Chmielewskis and the appellee, Ruskus, are entitled to an easement in the alley by express grant. In the deed from Key, when it owned practically all of the subdivision, to Krebs (the Chmielewskis' and Ruskus's predecessor in title) in 1942, the conveyance was made according to the plat; the 15-foot alley was spe-

cifically named as a call; and the use thereof was prescribed to be in common. At that time, the alley was clearly delineated on the recorded plat. It extended from Alta Avenue to Moyer Avenue in the rear of lots 1108 to 1111, inclusive, and lots 1122 to 1125 inclusive; and in a north-south direction from the rear of lots 1121 and 1126 to the rear of lots 1112 and 1136. This was the alley referred to and named in the deed, and its use was to be in common. The same provision was contained in the deeds to the Chmielewskis and to Ruskus. It is obvious that if the owner of any lot or lots had the right to close or obstruct the alley at any point, the use thereof would not be in common. It may be noted at this point that in the deed from Mitchell to Mandell that conveyed lots 1108 to 1111, it was provided that the conveyance was made "subject to the rights of others in and to so much of said parcels of ground that may be in the beds of streets, avenues, rights of way and reservations as shown on the Plat hereinbefore referred to." When the right to an easement is derived by express grant, it is, of course, coextensive with the grant, and the questions of dedication, estoppel and implied grants have no application. *Adams v. Peninsula Produce Exchange,* 138 Md. 656, 115 A. 106; 3 *Tiffany Real Property,* (3rd Ed.), 800. We hold the Chmielewskis and Ruskus have an easement, in common with the other lot owners, of ingress and egress in and over the 15-foot alley in the rear of lots 1108, 1109, 1110 and 1111.

We think the Shadburns have a similar easement over the alley, but upon a different theory. While the immediate grant to the Shadburns provided for the use of the alley in common, the grantor could convey, of course, no greater interest in the land than it (a corporation) possessed. It will be noted in the deed from Key to Miller (the Shadburns' predecessor in title) in 1942, the conveyance was according to the plat numbers of the lots, with no reference to the alleys or reservations, or their use in common. It does appear, however, by reference to the plat that the lots granted to Miller did bound in the center of the alley. The law is now well settled in this State that when one, who is the owner of land in a city, makes a plat thereof on which the

streets and alleys are laid down and then conveys it in lots as bounding on the streets and alleys or by reference to their numbers on the plat from which it appears that they do in fact bound on the streets or alleys, an intention to dedicate the land lying in the bed of the streets and alleys to public use will be presumed, in the absence of language showing that no dedication was intended. *Mullan v. Hochman,* 157 Md. 213, 220, 145 A. 554; *Hackerman v. City of Baltimore,* 212 Md. 618, 624, 130 A. 2d 732. And this applies when the street or alley is in the rear, as well as in the front, of the lots. *Hackerman v. City of Baltimore, supra,* p. 624. When the above occurs, two classes of persons are affected, one, the purchasers of the lots, and, two, the public. *Finance Corp. v. Realty Corp.,* 172 Md. 138, 148, 191 A. 81; *State Roads Comm. v. Teets,* 210 Md. 213, 221, 123 A. 2d 309; *Hackerman v. City of Baltimore, supra,* 212 Md. 625. There can be no dedication between the owner of land and individuals, *Brady v. Farley,* 193 Md. 255, 258, 66 A. 2d 474; 3 *Tiffany Real Property,* (3rd Ed.), sec. 800, p. 312; cf. *Finance Corp. v Realty Corp., supra,* 172 Md. 148; although the offer of dedication to the public is coextensive with the right of way acquired as an easement by the purchasers. *Hawley v. Baltimore,* 33 Md. 270, 280. The important difference is that a dedication to the public may be incomplete, but the easement of abutting owners, who have purchased upon reliance on the offer, may be complete. In the instant case, the public is not involved, and we are now dealing with the rights of individual purchasers, the Shadburns.

When Key resubdivided the property, placed the plat upon record and sold off the lots to Miller, Miller acquired certain rights in the portion of the alley not deeded to him in fee, which no subsequent action of Key, or its grantees of the remaining property, could affect, even had they so attempted. *Moale v. Baltimore,* 5 Md. 314, 324. The lots bounded upon the center of the alley, which was not then, and probably has not yet been, opened by the public authorities. As the conveyance to Miller granted the property by lot numbers only, a portion of the alley was deeded to him in fee, but this was held by him subject to the servitude of its use in

common with other lot owners. *Lippincott v. Harvey,* 72 Md. 572, 577, 19 A. 1041. He also obtained, by his deed, an easement by implication in a portion of the alley not conveyed to him in fee. The easement, which was subsequently acquired by the Shadburns, included the right of ingress and egress over the alley in the rear of lots 1108, 1109, 1110 and 1111.

The appellants further claim that their demurrer to the amended bill of complaint should have been sustained because there was no verification of the amendment. The original bill was verified. The amendment was not made by filing an entirely new bill with the amendment included, but by an amendment that added one exhibit and an addition to one paragraph of the original bill. If we assume, without deciding, that it was necessary in this case to verify that amendment, it is unnecessary for us to consider the same. The demurrer failed to name the lack of verification as a basis for its filing, Maryland Rule 373 b, and there is no showing in the record that the question was presented to or decided by, the trial court. Maryland Rule 885.

We think, however, the first paragraph of the chancellor's decree is too broad and, as it reads affects properties not the subject of this suit; therefore it should be eliminated. The second paragraph thereof should be revised so as to state specifically the rights of user of the prospective appellees in the northern portion of the alley between Alta and Moyer Avenues; and the reasons for the injunctions granted therein. General Equity Rules 54A (4). The third paragraph, which requires Atlantic to restore the alley to its condition before Atlantic changed the same in 1952, is correct. We will, therefore, remand the cause, without affirmance or reversal, so that the decree may be modified in accordance with this opinion.

> *Case remanded without affirmance or reversal of the decree, so that the decree may be modified in accordance with the above opinion, the appellants to pay the costs.*