GRAY ET AL. *v.* SHELL REALTY CORPORATION

[No. 189, September Term, 1958.]

*Decided April 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON and PRESCOTT, JJ.

*Claude A. Hanley* and *V. Stephen Lassotovitch,* with whom was *Wallace E. Gray* on the brief, for the appellants.

*Allen E. Buzzell* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellants, owners of lots 150, 151, 152 and 153, as shown on Plat 2 of Bowley's Quarters, on Seneca Creek, duly recorded in 1921, filed a bill for declaratory decree, against the appellee, Shell, claiming a right by adverse user to a roadway 15 feet wide running along the northwesterly side of an unimproved lot, 149, owned by Shell, from the county road to the water. The Chancellor found that for almost 30 years the appellants have used and maintained a slag road running from Seneca Road for a distance of 254 feet to a point where it curves in a U shape and runs back along the boundary of lot 153 to Seneca Road, servicing the five houses erected on the lots of the appellants. But the Chancellor found that a right of way from the point where the curve begins to the waterfront, a distance of some 235 feet, had not been established. This part of the alleged right of way was never improved, although there was some evidence of its use in the form of wheel tracks. The appellants challenge that finding, on the ground that it was clearly wrong. There was no cross-appeal.

It appears that the whole neighborhood had been a rural farming community prior to 1921, when the Bowley's Quar-

ters Company, predecessor in title to the appellee, laid out the farm in lots and had the plat recorded. This plat showed a structure marked "wharf," located at the water end of lot 149, but showed no access road to it. Shell did not acquire its lot until 1957. The Gray family moved in about 1921, and subsequently subdivided and sold off part of lot 150. The appellants claim they have always used the old shell wharf on lot 149, which was originally constructed by dumping oyster shells behind a rectangular log bulkhead, and contend that it was a public landing. At the present time only traces of it remain, and it was in bad repair in 1921. There is no evidence that it was constructed out of public funds. On the contrary, there was testimony that it was constructed by some former owner of the farm for the use of tenant farmers, and that more than 50 years ago the wharf was used by sailing vessels to unload fertilizer and to load farm produce. There was also testimony that since 1921 the appellants and others have used the wharf in summer for crabbing or fishing, or as a place to moor small boats.

Mr. Gison, who had been an officer and director of Bowley's Quarters Company from the time of its organization in 1908, testified that the Company gave permission to any of the lot purchasers to use the unimproved lots as they pleased, so long as they were unsold or until such time as "we found use for it." Hamilton and Gray tried to buy lot 149 a number of times, particularly in 1948, but he declined to sell it. He gave them permission to use the old wharf for their boats. Hamilton, who built his house in 1928, testified he asked Gison about buying lot 149 at that time. He denied that Gison ever gave him permission to use the wharf or road. Mr. Gray testified he had been familiar with the area since 1921, and had used the wharf and sandy beach on lot 149. He admitted discussing with Gison the possibility of purchasing lot 149. Gison said he didn't want to sell at that time, but stated that it was not a community lot and it could be sold at any time.

It has been held that the principle of presumptive dedication, or *quasi* prescription, will not be applied to give rise to a right in the general public to use the land of another on a

534

navigable river as a landing place. *Thomas v. Ford,* 63 Md. 346, 352. In *O'Brecht v. State,* 145 Md. 171, 176, it was said that a road running entirely through private property cannot become a public highway by prescription unless its termini are public places, and that mere evidence of user will not establish a landing as a public one. See also *Improvement Co. v. Boyd,* 161 Md. 269, 278, and note, 53 A. L. R. 1191, 1196. The case of *Canton Co. v. Baltimore City,* 104 Md. 582, is distinguishable on the facts, for there the alleged street had been laid out, graded and paved by the company, and the City had exercised dominion over it, in addition to its use by the public for more than 20 years. The testimony in the instant case does not establish that the old shell wharf was a public landing, or a public terminus. Moreover, the testimony does not show that its use by the appellants was exclusive. Their claim is that it was enjoyed in common with others, and this is not enough to establish their private right thereto, appurtenant to their land. *Day v. Allender,* 22 Md. 511, 528; *Cox v. Forrest,* 60 Md. 74, 80; notes, 111 A. L. R. 221, and 170 A. L. R. 776, 829.

In view of our conclusion on these points, it is unnecessary to discuss the question as to whether the use was permissive, in any event. See *Easter v. Overlea Land Co.,* 129 Md. 627, 632, and *Feldstein v. Segall,* 198 Md. 285, 295. Nor need we discuss the question of implied grant, which is predicated upon the use being necessary to a reasonable enjoyment of the land granted. *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34, 47. There is no such showing in the instant case. There was evidence that the developer had reserved rights of way to the waterfront, for the benefit of interior lots, at three other places, but not at the place now claimed. Cf. *Klein v. Dove,* 205 Md. 285. The claim in the instant case must stand or fall on the basis of the public character of the landing, and this is not established.

*Decree affirmed, with costs.*