# THOMAS LAYMAN ET UX. *v.* JESSE GNEGY ET UX.

[No. 787, September Term, 1974.]

*Decided May 6, 1975.*

The cause was argued before THOMPSON, DAVIDSON and MASON, JJ.

*John C. Sullivan* and *Robert Kazary* for appellants.

*Jack R. Turney* for appellees.

THOMPSON, J., delivered the opinion of the Court.

Jesse Gnegy, Jr. and Alma Gnegy, his wife, sued at law to establish a right of way over a driveway traversing the land of Thomas Layman and Mary Layman, his wife. In the declaration the Gnegys also asked that an injunction be issued to require the Laymans to remove a fence blocking their use of the right of way. The case was tried before Chief Judge Stuart F. Hamill in the Circuit Court for Garrett County. Judge Hamill granted the injunction on the basis that the driveway in question was a public road. We affirm, not because the road in question was a public highway but because the Gnegys obtained a right of way over it by virtue of the language in their deed.

The record shows that James Ray Beegley and his wife owned a farm containing 273 acres on the west side of U.S. Route 219 in Garrett County. In 1958 the Beegleys built a second dwelling [now the property of the Gnegys] on their property approximately 100 feet north of their then-existing home. They constructed a driveway leading from Route 219 to the rear of the new dwelling; the driveway went behind the new home and connected with a roadway which led from Route 219 to the rear of their farm. The Beegleys had used this road as a farm road and as a driveway to their dwelling house. Thus, there was a complete U turn from Route 219 to the rear of the new dwelling and back out to Route 219. One part of that U turn is the roadway, the use of which is in dispute. In 1963, the Beegleys conveyed the entire farm to Eli and Esther Yoder. In 1964 the Yoders leased the new dwelling to Jesse Gnegy and his wife, the appellees. Some two years later on March 16, 1966, that property was conveyed to the Gnegys. In the deed the Gnegys were not

expressly given the right to use the farm road in question but the metes and bounds description contained a call to "the north margin of a private drive" [the road in dispute] as the southern boundary of their lot and to U. S. Route 219 as the eastern boundary of their lot which was approximately 150 feet by 150 feet in size. On July 13, 1973, the Yoders conveyed the rest of the original farm to the Laymans, the appellants herein. In that deed there was no reference to a right of way over the farm road. Soon thereafter the Laymans constructed a fence in such manner as to block the Gnegys from using that portion of the farm road which constituted one prong of the U turn around their dwelling house.

Testimony showed that in previous years the farm road in question had led back to another farm known as the Ace Coddington Farm and had been used by the owners of that farm for access to their property. About 1940, however, the owners of the Coddington Farm constructed another entrance from another highway and no longer used the roadway over what is now the Laymans' property. The testimony also showed that at one time, apparently on the appellants' farm, there had been a Lutheran church and cemetery; that the church no longer existed and had not been used since the 1880's, and that although the cemetery was somewhat grown up there were occasional visitors, particularly on Memorial Day, who made use of the farm road. Visits for this purpose currently numbered one or two a year. Mr. Layman testified that during his ownership only one or two persons had used the road to go back to the graveyard and had requested his permission to do so. Mr. Gnegy testified that he had used the road in question continuously and regularly from the time he first leased the property in 1964. There was evidence that the Coddington Farm fronted on another public highway but there was no evidence that the farm road in question led to that highway. The record shows that at one time a previous owner of the farm had used the older dwelling house as a post office.

We do not think this evidence was sufficient to establish that the farm road was a public highway for two reasons.

First, the only possible public users of the road were those who were coming to the post office at the time when the original dwelling house constituted the local post office and those persons attending church and visiting the graveyard. In those instances it appears to us that the use was by virtue of (1) the ownership of the fee by the operators of the post office and (2) private rights of way in the church and in the graveyard lot owners rather than by virtue of a public right. Obviously the use of the road as access to the Coddington Farm by the owners and visitors to that property was not a public use. Secondly, even if we were to assume that there was a public use of the roadway, it could not have become public by prescription unless its termini were public places. *Gray v. Shell Realty Corporation*, 219 Md. 531, 150 A. 2d 255 (1959) and *O'Brecht v. State*, 145 Md. 171, 176, 125 A. 539 (1924).

As we have indicated however, we base our decision on the fact that the deed from the Yoders to the Gnegys conveyed the right of way to use the farm road along the edge of their property out to Route 219. Maryland has long followed the majority rule that where a street or other way is called for as a boundary and the grantor owns the fee in the street, the grantee gets a right of way by implication to the nearest public road. See 46 A.L.R.2d 461. The doctrine in Maryland can be explained by quotations from two cases. In *Atlantic Construction Corp. v. Shadburn*, 216 Md. 44, 52-53, 139 A. 2d 339 (1958) the Court said:

> "When Key resubdivided the property, placed the plat upon record and sold off the lots to Miller, Miller acquired certain rights in the portion of the alley not deeded to him in fee, which no subsequent action of Key, or its grantees of the remaining property, could affect, even had they so attempted. *Moale v. Baltimore*, 5 Md. 314, 324. The lots bounded upon the center of the alley, which was not then, and probably has not yet been, opened by the public authorities. As the conveyance to Miller granted the property by lot numbers only, a portion of the alley was deeded to him in fee, but this was

held by him subject to the servitude of its use in common with other lot owners. *Lippincott v. Harvey*, 72 Md. 572, 577, 19 A. 1041. He also obtained, by his deed, an easement by implication in a portion of the alley not conveyed to him in fee. The easement, which was subsequently acquired by the Shadburns, included the right of ingress and egress over the alley in the rear of lots 1108, 1109, 1110 and 1111."

The Court said in *Neal v. Hopkins*, 87 Md. 19, 28-29, 39 A. 322 (1897):

"It must be noted there is no evidence that the lot of the defendants nor any of the lots of other persons were sold with reference to maps or plats. The dedication of Willis street to the extent of the lots of Perry, Kleckner and Mace was effected only on the doctrine of an implied covenant that the street called for by the deeds shall always remain open as a public street. Having thus set apart the street for a public use, 'it would be a violation of good faith to the public and those who have acquired private property to revoke the dedication, and for that reason it cannot be done.' *Cincinnati v. White*, 6 Peters, 438. But such dedication does not create a right of way over all the lands of the vendor, the 'true doctrine' being 'that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor to the full extent and dimensions only until it reaches some other street or public way.' The dedication 'must necessarily be measured by the limits of the right' the purchaser has acquired by virtue of his grant. *Hawley's case*, 33 Md. 280; *M. & C. C. v. Frick*, 82 Md. 83. It is therefore clear that prior to the time of the establishment of the sidewalk the dedication of Willis street did not extend further eastwardly from Locust street than the eastern corner of the

Mace lot, no lots binding on Willis street having been sold by the plaintiff to the east of that point. If this be so, the act of plaintiff in constructing the sidewalk on his own property, at the end of a *cul de sac,* for the purpose of widening a street that later on he proposed to dedicate to the public, cannot be regarded as an act from which to infer that he then intended to appropriate the sidewalk to the public. Such intention must be clear from all the circumstances of the case. *McCormick v. City of Balto.,* 45 Md. 523; *Tinges v. Baltimore,* 51 Md. 600."

*See also Flersheim v. Baltimore,* 85 Md. 489, 36 A. 1098 (1897); *Moale v. Baltimore,* 5 Md. 314, 61 A. 276 (1854); *White v. Flannigain,* 1 Md. 525, 54 AD 668 (1852). We so held in *Clevenger v. Kulla,* 22 Md. App. 448, 323 A. 2d 623 (1974).

At oral argument appellant argued that the doctrine of these cases cannot be applied in the instant case because here the call in the deed was to a private road as opposed to a public street. We have been unable to locate cases supporting such a view. The rule was pointed out clearly in *Beechwood v. Reed,* 438 Pa. 178, 265 A. 2d 624, 626 (1970):

"It is the law of this Commonwealth that if an open, public street is called for as a boundary the grantee takes title in fee to the middle of the street if the grantor has title to it. Where the street called for as a boundary is not a public highway nor dedicated to public use, the grantee does not take title to the middle of it but acquires an easement by implication over it.

* * * *

"Although Green Lane Road had once been a public road, it was the subject of vacation proceedings in 1932. It therefore reverted to the status of a private road which could be the subject of an implied easement. *Chambersburg Shoe Manufacturing Company v. Cumberland Valley Railroad Company,* 240 Pa. 519, 87 A. 968 (1913). (The question of the creation of a public easement

by prescription will be discussed below.) As nothing in the record rebuts the presumption that when such a description appears in a deed such an easement is to be implied, both of the courts below were correct in holding that some easement does exist."

To the same effect see *Casella v. Sneirson,* 325 Mass. 85, 89 N.E.2d 8 (1949) and *Gish v. City of Roanoke,* 119 Va. 519, 89 S. E. 970 (1916). We, therefore hold that, in the circumstances of this case, the deed from the Yoders to the Gnegys, by making reference to the private roadway as the southern border of appellees' property created in the appellees a right of way over the aforesaid roadway out to Route 219. Of course, such a right of way by implication cannot arise when the deed makes clear that no such intention existed. *Condry v. Laurie,* 184 Md. 317, 41 A. 2d 66 (1945). *See also Mt. Sinai v. Pleasant Manor,* 254 Md. 1, 253 A. 2d 915 (1969). There is nothing in the appellants' deed in the case at bar to indicate a contrary intention.

It is entirely possible that the Gnegys obtained an easement by implication under another theory. That theory was succinctly discussed by Hammond, J., later Chief Judge of the Court of Appeals, in *Dalton v. Real Estate & Improvement Co.,* 201 Md. 34, 46-47, 92 A. 2d 585 (1952):

"Nevertheless, when the owner of property has used one part for the benefit of another in such manner that there would arise a presumption that an easement existed if the two parts had been held by different owners, then, upon conveyance of the part so used, there is a *quasi*-easement which will be granted by implication as an easement to the purchaser of the other or dominant part, provided the use has been such that the easement would be classed as continuous and apparent, and necessary to the reasonable enjoyment of the property conveyed. *Eliason v. Grove,* 85 Md. 215, 36 A. 844, *Burns v. Gallagher,* 62 Md. 462. Continuous and apparent easements in the early law did not include ways. However, the doctrine of *quasi*-easements

has been extended to include established ways where they are reasonably necessary to the enjoyment of the property conveyed, and this Court has so held. See *Dineen v. The Corporation*, 114 Md. 589, 79 A. 1021; *McConihe v. Edmonston*, 157 Md. 1, 145 A. 215; *Tiffany, 'Real Property'*, 3rd Ed., Chapter 14, Sections 780 and 785; 4 Md. Law Review 88.

"If the Court finds the way not sufficiently 'apparent' or not necessary to the 'reasonable enjoyment' of the land granted, a grant will not be implied. *Duvall v. Ridout*, 124 Md. 193, 92 A. 209, L. R. A. 1915C, 345.

"A distinction has been maintained in the law between implied grants and implied reservations. If an easement is continuous and apparent and necessary to the reasonable enjoyment of the premises granted, it will be implied that the grant included the easement. However, if a grantor intends to reserve any rights or uses in or over the tenement granted, he must reserve them expressly, and the only exception is of easements, including ways, of actual, strict necessity. The reason for the last rule is said to be that a grantor cannot derogate from his grant. There is a discussion of the two rules and examples of their application in *Slear v. Jankiewicz*, 189 Md. 18, 54 A. 2d 137. See also *Mitchell v. Seipel, supra*."

*See also Millson v. Laughlin*, 217 Md. 576, 142 A. 2d 810 (1958); *McConihe v. Edmonston*, 157 Md. 1, 145 A. 215 (1929); *Burns v. Gallagher*, 62 Md. 462 (1884).

While we do not rely on the quasi-easement theory as giving rise to an easement by implication, that theory adds obvious support to our holding that the grantors in the deed to the appellees intended that they should enjoy the use of the private roadway out to the public highway.

*Judgment affirmed.*
*Appellants to pay the costs.*